Armand J. Howell, Bar Number 10029
Stephen B. Watkins, Bar Number 3400
Benjamin J. Mann, Bar Number 12588
Paul M. Halliday, Jr., Bar Number 5076
HALLIDAY, WATKINS & MANN, P.C.
Attorneys for Bank of America, N.A.
376 East 400 South, Suite 300
Salt Lake City, UT 84111
Telephone:  801-355-2886
Fax:  801-328-9714
Email: armand@hwmlawfirm.com
File No: 48381

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| In re:<br><br>JENNIFER ATKINSON<br><br>Debtor. | Bankruptcy Case No. 17-20039 JTM<br>Chapter 13<br>**MOTION FOR RELIEF FROM AUTOMATIC STAY (REAL PROPERTY) OR IN THE ALTERNATIVE ADEQUATE PROTECTION**<br><br>[Filed Electronically] |
|---|---|

Bank of America, N.A. ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay, or in the alternative for adequate protection, with respect to certain real property of the Debtor and Co-Debtor having an address of 2897 W 2300 N, Clinton, UT 84015 (the "Property").   In further support of this Motion, Movant respectfully states:

1.      A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor on January 4, 2017.

2.      A Chapter 13 Plan was confirmed on April 20, 2017.

3.      The Debtor and Co-Debtor, Terreyon M. Atkinson, have executed and delivered

or are otherwise obligated with respect to that certain promissory note in the original principal amount of $142,918.00 (the "Note").  A copy of the Note is attached hereto as Exhibit "A". Movant is an entity entitled to enforce the Note.

4.      Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor and Co-Debtor under and with respect to the Note and the Deed of Trust are secured by the Property.  A copy of the Deed of Trust is attached hereto as Exhibit "B".

5.      All rights and remedies under the Deed of Trust have been assigned to the Movant pursuant to that certain assignment of deed of trust, a copy of which is attached hereto as Exhibit "C".

6.      As of July 18, 2017, the outstanding amount of the Obligations less any partial payments or suspense balance is $260,341.28.

7.      In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred reasonable fees and costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

8.      The following chart sets forth the number and amount of postpetition payments due pursuant to the terms of the Note that have been missed by the Debtor as of July 18, 2017.

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 6 | February 1, 2017 | July 1, 2017 | $1,289.91 | $7,739.46 |

**Total**: $7,739.46

9.      The estimated market value of the Property is $198,000.00.  The basis for such

valuation is the Davis County Tax Assessor.

10.    Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, is $260,341.28.

11.    Cause exists for relief from the automatic stay for the following reasons:

(a)    Movant's interest in the Property is not adequately protected.  The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

(b)    Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor has no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.    Relief from the stay and co-debtor stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law.

2.    That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.    That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

4.    For such other relief as the Court deems proper.

DATED this 27th day of July, 2017.

/s/ Armand J. Howell
Armand J. Howell
Attorney for Movant

# EXHIBIT "A"

| Multistate | NOTE | FHA Case No. |
|---|---|---|
| LOAN NO. | | |

DECEMBER 1        2000
[Date]

2897 WEST 2300 NORTH
CLINTON, UT 84015
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
HILLSBOROUGH CORPORATION
A NEVADA CORPORATION
and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED FORTY-TWO THOUSAND NINE HUNDRED
EIGHTEEN AND 00/100
Dollars (U.S. $142,918.00         ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of SEVEN AND SEVEN EIGHTHS
percent (    7.875        %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
FEBRUARY 1 ,2001        . Any principal and interest remaining on the first day of   JANUARY 1            ,
2031        , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at 1204 EAST BASELINE, #104   TEMPE, AZ   85283
or at such place as Lender may designate in writing
by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 1,036.26        . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for
the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a
partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in
writing to those changes.

FHA Multistate Fixed Rate Note ~ 10/95

Page 1 of 2                              Initials:



## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR                                        percent (        4.000        %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
TERREYON M. ATKINSON                    -Borrower

_____ (Seal)
JENNIFER A. ATKINSON                    -Borrower

PAY TO THE ORDER OF                 _____ (Seal)
COUNTRYWIDE HOME LOANS, INC.                                 -Borrower
WITHOUT RECOURSE
HILLSBOROUGH CORPORATION
BY: _____        _____ (Seal)
ANDREW W. CAMPBELL, PRESIDENT                                -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY CH
CAROL HANVUTHINAMON
ASST. SECRETARY

ATKINSON

# EXHIBIT "B"

E 1627317 B 2721 P 1137
SHERYL L. WHITE, DAVIS CNTY RECORDER
2000 DEC  4  2:37 PM FEE  20.00  DEP JB
REC'D FOR FIRST AMERICAN TITLE CO OF UTA

WHEN RECORDED RETURN TO:
HILLSBOROUGH CORPORATION, CLOSING DEPARTMENT
1204 EAST BASELINE ROAD, #104
TEMPE, AZ  85283

[Space Above This line for Recording Data]

STATE OF UTAH

FHA Case No.:

LOAN NO. ███████

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on    **DECEMBER 1, 2000**

The grantor is
**TERREYON M. ATKINSON AND JENNIFER A. ATKINSON, HUSBAND AND WIFE**

("Borrower"). The trustee is
**FIRST AMERICAN TITLE INSURANCE COMPANY OF UTAH
A CALIFORNIA CORPORATION**
("Trustee"). The beneficiary is
**HILLSBOROUGH CORPORATION
A NEVADA CORPORATION**
which is organized and existing under the laws of **NEVADA**                    , and whose address is
**1204 EAST BASELINE, #104
TEMPE, AZ  85283**
("Lender"). Borrower owes Lender the principal sum of **ONE HUNDRED FORTY-TWO THOUSAND NINE
HUNDRED EIGHTEEN AND 00/100**           Dollars (U.S. $ **142,918.00**   ). This debt
is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on **JANUARY 1, 2031**                  .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the
security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower irrevocably grants and coveys to Trustee, in trust, with power of sale, the
following described property located in **DAVIS**  County, Utah:
**ALL OF LOT 56, SUNSHINE MEADOWS PHASE 3, CLINTON CITY, DAVIS
COUNTY, UTAH, ACCORDING TO THE OFFICIAL PLAT THEREOF.**

TAX I.D. # ███████████

which has the address of   **2897 WEST 2300 NORTH, CLINTON**
                                              [Street]                                              [City]

Utah        **84015**        ("Property Address").
              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a
part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is
referred to in this Security Instrument as the "Property."
BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and
convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will
defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

FHAUTDOT (05/96)

Page 1 of 6

Initials ████

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

E 1627317 B 2721 P 1138

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If the Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b) and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

Initials

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable. E 1627317 B 2721 P 1139

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 90 DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 90 DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise or any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signors.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.                                                    E 1627317 B 2721 P 1140

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender form exercising its rights under this paragraph 17.

Lender shall note be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to reasonable attorneys' fees and costs of title evidence.

If the power of sale in invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county in which any part of the Property is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county clerk of the county in which the sale took place.

Initials

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

E 1627317 B 2721 P 1141

**Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider          ☐ Planned Unit Development Rider

☐ Graduated Payment Rider     ☐ Growing Equity Rider

☐ Non-Owner Occupancy Rider   ☐ Adjustable Rate Rider

☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 5 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                     **TERREYON M. ATKINSON**        - Borrower

_____          _____ (Seal)
                                     **JENNIFER A. ATKINSON**        - Borrower

                                     _____ (Seal)
                                                                     - Borrower

                                     _____ (Seal)
                                                                     - Borrower

_____
Space Below This Line for Acknowledgement

STATE OF Utah              )
                           ) SS:
COUNTY OF Salt Lake        )

The foregoing instrument was acknowledged before me, a Notary Public, on 12/1/00
                                                                            Date
by: Terreyon M. Atkinson and Jennifer A. Atkinson

Person(s) Acknowledging

In WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission expires: 01/13/02

                                     _____
                                                Notary Public

### REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the persons legally entitled thereto.

Dated: _____ _____      _____ _____

E 1627317 B 2721 P 1142

# EXHIBIT "C"

RECORDING REQUESTED BY:

E 1627318 B 2721 P 1143
SHERYL L. WHITE, DAVIS CNTY RECORDER
2000 DEC  4  2:38 PM FEE 10.00  DEP JB
REC'D FOR FIRST AMERICAN TITLE CO OF UTA

AND WHEN RECORDED MAIL TO:
HILLSBOROUGH CORPORATION
1204 EAST BASELINE ROAD, #104
TEMPE, AZ  85283
Case No. ▮▮▮▮▮▮▮
Loan No. ▮▮▮▮▮▮▮

NOTE: After having been recorded, this assignment should be kept with the Note and Deed of Trust hereby assigned.

▮▮▮▮▮▮▮ **Assignment of Deed of Trust**

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
COUNTRYWIDE HOME LOANS, INC.,
ITS SUCCESSORS AND/OR ASSIGNS
all beneficial interest under that certain Deed of Trust dated     DECEMBER 1, 2000
executed by    TERREYON M. ATKINSON AND JENNIFER A. ATKINSON, HUSBAND AND WIFE

, Trustor;

to FIRST AMERICAN TITLE INSURANCE COMPANY OF UTAH,
A CALIFORNIA CORPORATION,
127 SOUTH 500 EAST #600,
SALT LAKE CITY, UT  84102                                    , Trustee; and
recorded concurrently in the office of the County Recorder of  DAVIS                    County,
describing land therein as:         MEADOWS
ALL OF LOT 56, SUNSHINE MEADOWS PHASE 3, CLINTON CITY, DAVIS
COUNTY, UTAH, ACCORDING TO THE OFFICIAL PLAT THEREOF.

TAX I.D. #▮▮▮▮▮▮▮▮

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part the real property described therein.

Dated:     DECEMBER 1, 2000                HILLSBOROUGH CORPORATION
                                            A NEVADA CORPORATION

                                            _____
                                            ANDREW W. CAMPBELL
                                            PRESIDENT

(ACKNOWLEDGMENT: FOR CORPORATION)

STATE OF    ARIZONA                    )
                                       ) SS:
COUNTY OF  MARICOPA                    )

On    DECEMBER 1, 2000            , before me, the undersigned, a Notary Public for said state,
personally appeared    ANDREW W. CAMPBELL
who executed the within instrument as    PRESIDENT
personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within instrument on behalf of the corporation therein named, acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.          Signature: _____


OFFICIAL SEAL
LYN BUNCH
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Expires Jun. 4, 2003

                                            Lyn Bunch
                                            _____
                                            Name (typed or printed)

                                            My Commission Expires:

ASSIGN

2433272
BK 4735 PG 582

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.

WHEN RECORDED MAIL DOCUMENT
TAX STATEMENT TO:
Countrywide Home Loans, Inc
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082

E 2433272 B 4735 P 582
RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH RECORDER
3/18/2009 11:25:00 AM
FEE $10.00 Pgs: 1
DEP eCASH REC'D FOR BACKMAN TITLE SERVICES



SPACE ABOVE THIS LINE FOR RECORDER'S

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

COUNTRYWIDE HOME LOANS SERVICING, L.P.

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 12/01/2000, EXECUTED BY: TERREYON M ATKINSON and JENNIFER A ATKINSON, TRUSTOR: TO FIRST AMERICAN TITLE INSURANCE COMPANY OF UTAH A CALIFORNIA CORPORATION, AS TRUSTEE AND RECORDED AS INSTRUMENT NO. 1627317 ON 12/04/2000, IN BOOK 2721, PAGE 1137 OF OFFICIAL RECORDS IN THE COUNTY RECORDERS OFFICE OF DAVIS COUNTY, IN THE STATE OF UTAH. THE LAND AFFECTED BY THIS ASSIGNMENT IS LOCATED IN DAVIS COUNTY, THE STATE OF UTAH AND IS DESCRIBED AS FOLLOWS:

ALL OF LOT 56, SUNSHINE MEADOWS PHASE 3, CLINTON CITY, DAVIS COUNTY, UTAH, ACCORDING TO THE OFFICIAL PLAT THEREOF.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

Dated: 3/17/09                      By:   COUNTRYWIDE HOME LOANS, INC.

_____
Leonard Valsin       Assistant Secretary

STATE OF _____ Texas
COUNTY OF _____ Dallas

On 3/17/09 , before me _____ Christopher A. Williams _____ , personally appeared
_____ Leonard Valsin _____ , known to me (or proved to me on the oath of _____ or
through _____ ) to be the person whose name is subscribed to the foregoing instrument and
acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
WITNESS MY HAND AND OFFICIAL SEAL

_____
Notary Public's Signature

CHRISTOPHER A. WILLIAMS
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires
June 20, 2012

Tax ID:                      Page 1 of 1                      *Form UTAssgn (04/08)*

2730860
BK 5740 PG 46

E 2730860 B 5740 P 46-47
RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH RECORDER
4/3/2013 8:38:00 AM
FEE $12.00 Pgs: 2
DEP eCASH REC'D FOR GUARDIAN TITLE INS AG

AFTER RECORDING RETURN TO:

Armand J. Howell, Esq.
Matheson and Howell PC
648 East First South
Salt Lake City, Utah 84102
Telephone: (801) 363-2244
MMOJ No.: ▓▓▓▓▓

TK - ▓▓▓▓

Parcel ID #: ▓▓▓▓▓▓

## ASSIGNMENT OF DEED OF TRUST

**FOR VALUABLE CONSIDERATION**, the receipt of which is hereby acknowledged, Countrywide Home Loans, Inc., hereby assigns to:

Bank of America, N.A.

that certain Deed of Trust, together with the indebtedness secured thereby, which Deed of Trust is dated December 1, 2000, was executed by Terreyon Atkinson, as Trustor, to First American Title Insurance Company of Utah A California Corporation, as Trustee, and filed for record with the Davis County Recorder on December 4, 2000, as Entry No. 1627317, in Book 2721, at Page 1137, situated in said County, described as follows:

ALL OF LOT 56, SUNSHINE MEADOWS PHASE 3, CLINTON CITY, DAVIS COUNTY, UTAH, ACCORDING TO THE OFFICAL PLAT THEREOF.

Together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.

**COURTESY RECORDING**
This document is being recorded solely as a courtesy and an accommodation to the parties named therein. Guardian Title Insurance Agency hereby expressly disclaims any responsibility or liability for the accuracy thereof.

2730860
BK 5740 PG 47

MMOJ No.: ███████
Parcel ID #: ███████

Dated: _March 28, 2013_

Countrywide Home Loans, Inc.

By: _Jacqueline Spears-Manning_

Name: _Jacqueline Spears-Manning_

Title: _Assistant Vice President_

ACKNOWLEDGMENT:

STATE OF _Texas_
COUNTY OF _Dallas_

On _March 28, 2013_ before me, _Quan Nguyen_ Notary Public, personally
appeared _Jacqueline Spears-Manning_ who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is /are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon the behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the Laws of the State of California that the foregoing
paragraph is true and correct.

_Texas Jan 8m_

WITNESS my hand and official seal.

QUAN NGUYEN
Notary Public, State of Texas
My Commission Expires
September 11, 2013

Signature_____ (seal)
          _Quan Nguyen_

2852723
BK 6219 PG 49

16/4

RECORDING REQUESTED BY:
BANK OF AMERICA, N.A.

**WHEN RECORDED MAIL TO:**
**CoreLogic**
450 E. Boundary Street
Chapin, SC 29036

Attn: Assignment Unit
Doc # ███████████

E 2852723 B 6219 P 49-52
RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH  RECORDER
03/09/2015 09:00 AM
FEE $16.00 Pgs: 4
DEP RT  REC'D FOR CORELOGIC

████████████████████

This Space for Recorder's Use Only

TITLE OF DOCUMENT:
███████████

# Corrective
# Assignment of Deed of Trust

This Corrective Assignment is being recorded to correct the Chain of Title
and replace the assignment that recorded on 04/03/13 Document #████████
Bk 5740 Pg 46 in the county of  Davis , UT.

Borrowers:
TERREYON M ATKINSON & JENNIFER A ATKINSON
2897 W 2300 N
CLINTON, UT 84015

THIS SPACE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional recording fee applies)

➤ 059-TITLE PAGE (R7/95)

*2852723*
BK 6219 PG 50

Recording requested by:
BANK OF AMERICA , N.A. SBM TO
BAC HOME LOANS SERVICING,LP,
FKA COUNTRYWIDE HOME LOANS
SERVICING LP

When recorded mail to:
CORELOGIC

450 E BOUNDARY STREET
CHAPIN, SC 29036
.Attn: REVIEW AND RESOLUTION

---

CORRECTIVE CORPORATION ASSIGNMENT OF DEED OF TRUST

Doc. ID# ███████████
Commitment# ███████

For value received, the undersigned, BANK OF AMERICA , N.A. SBM TO BAC HOME
LOANS SERVICING,LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP, 1800 TAPO CANYON
ROAD, SIMI VALLEY, CA 93063, hereby grants, assigns and transfers to:
BANK OF AMERICA, N.A.
1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063

All beneficial interest under that certain Deed of Trust dated 12/01/00,
executed by: TERREYON M ATKINSON and JENNIFER A ATKINSON, Trustor as per
TRUST DEED recorded as Instrument No. 1627317 on 12/04/00 in Book 2721 Page
1137 of official records in the County Recorder's Office of DAVIS County,
UTAH.
   The Trustee is FIRST AMERICAN TITLE INSURANCE COMPANY OF UTAH, A
CALIFORNIA Corporation *c.s
Tax Parcel = ███████████
Original Mortgage $142,918.00
2897 W 2300 N, CLINTON, UT 84015

   (See attached Exhibit for Legal Description)

Together with the Note or Notes therein  described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Deed of Trust.

2852723
BK 6219 PG 51

CORRECTIVE CORPORATION ASSIGNMENT OF DEED OF TRUST
Doc. ID# ████████
Commitment# ████████

Dated: 11/20/2014     BANK OF AMERICA , N.A. SBM TO BAC HOME LOANS
SERVICING,LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP

By _____
CYNTHIA SANTOS, ASSISTANT VICE PRESIDENT .

State of California
County of Ventura

On 11/20/2014 before me, _____ D. Nieblas _____, Notary Public,
personally appeared CYNTHIA SANTOS, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____
D. Nieblas
_____, Notary Public

Prepared by: CYNTHIA SANTOS
1800 TAPO CANYON RD,
SIMI VALLEY, CA 93063
Phone#: (213) 345-0957   Ext:957

D. NIEBLAS
COMM.# 2057846
NOTARY PUBLIC · CALIFORNIA
VENTURA COUNTY
My Comm. Expires Feb. 14, 2018

(2)

*2852723*
*BK 6219 PG 52*

# Legal Description

ALL OF LOT 56, SUNSHINE MEADOWS PHASE 3, CLINTON CITY, DAVIS
COUNTY, UTAH, ACCORDING TO THE OFFICAL PLAT THEREOF.

Doc. ID# ▓▓▓▓▓▓▓▓▓▓▓